## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Sheila Powell, *on behalf of herself and all others similarly situated*, | : <br> : <br> :  Civil Action No.: _____ <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> :  **CLASS ACTION COMPLAINT** |
| New York & Company, Inc.; New York & Company Stores, Inc., | :  **JURY TRIAL DEMANDED** <br> : <br> : |
| Defendants. | : |

For this Class Action Complaint, the Plaintiff, Sheila Powell, by and through her

undersigned counsel, pleading on her own behalf and on behalf of others similarly situated, states

as follows:

## __INTRODUCTION__

1.      Plaintiff, Sheila Powell ("Plaintiff"), brings this class action for damages,

injunctive relief, and declaratory relief from the illegal actions of Defendants New York &

Company, Inc. and New York & Company Stores, Inc. ("Defendants").  Defendants sent

unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2.      Wireless spam is a growing problem in the United States.  In April 2012, the Pew

Research Center found that 69% of texters reported receiving unwanted spam text messages,

while 25% reported receiving spam texts weekly.  http://www.pewinternet.org/fact-

sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam

Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States,

consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3.      Defendants retail women's clothing through over 500 nationwide stores and online.

4.      In an effort to market its products, Defendants established an automated text messaging program which introduced promotions and discounts to consumers via automated text messages to their cellular telephones.

5.      Defendants' automated text messages stated that consumers could respond "STOP" to stop or opt out of its text messages.  However, Defendants ignored consumers' 'STOP' requests, and instead continued to send their automated telemarketing text messages without consumers' prior express consent, in violation of the TCPA.

6.       Plaintiff is one such consumer, and sues Defendants for their TCPA violations individually and on behalf of all others similarly situated.

7.      Defendants illegally contacted Plaintiff and Class members via their cellular telephones, thereby causing Plaintiff and Class members to incur certain charges or reduced telephone time for which Plaintiff and Class members had previously paid by having to retrieve or administer messages left by Defendant during those illegal calls, and invading the privacy of said Plaintiff and Class members.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and because a substantial part of the events giving rise to the claim

occurred in this District.

## PARTIES

10.    Plaintiff is, and at all times mentioned herein was, an adult individual residing in Washington, D.C.

11.    Defendant New York & Company, Inc. is a Delaware corporation headquartered at 330 West 34th Street, New York, NY 10001.

12.    Defendant New York & Company Stores, Inc. is New York corporation headquartered at 330 West 34th Street, New York, NY 10001.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13.    The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

14.    Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

15.    47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

    (A)    to store or produce telephone numbers to be called, using a random or sequential number generator; and

    (B)    to dial such numbers.

16.    According to the Federal Communications Commission ("FCC"), an ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that

the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

17.    "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014,  ¶ 132 (2003) ("The basic function of [ATDS], however, has not changed—the capacity to dial numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.").

18.    Moreover, the FCC has made clear that it is a system's capacity to dial randomly or sequentially that determines whether it is an ATDS, not its "present ability." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, FCC 15-72, at ¶ 15 (July 10, 2015) ("2015 FCC Order"); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[T]he clear language of the TCPA 'mandates that the focus be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" *(quoting Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009))). In other words, "even when the equipment presently lack[s] the necessary software, it nevertheless [may have] the requisite capacity to be an autodialer." 2015 FCC Order, at ¶ 16.

19.    A piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually

perform the functions described in the definition. 2015 FCC Ruling, at ¶ 18.

20.     The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged."  **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis supplied); *see Gager v.*

*Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

21.     Further, the FCC has clarified that for telemarketing calls,

> "[A] consumer's written consent . . . must be signed and be sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at the telephone number the consumer designates."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27

FCC Rcd. 1830, 1844 ¶ 33 (2012).

## ALLEGATIONS APPLICABLE TO PLAINTIFF

22.     Defendants placed automated telemarketing text messages to Plaintiff's cellular

telephone number, 202-XXX-0758, from telephone number 697895.

23.     On April 8, 2016, Defendants sent a text message to Plaintiff.  The message said:

"Take $25 off w/purch of $75 or more!  Recurring msgs/mo."

24.     Defendants' message also included the instruction to "Txt STOP to Stop."

25.     Plaintiff responded to the text message by sending "STOP."

26.     However, on April 15, 2016, Defendants sent Plaintiff another text message to Plaintiff's cellular telephone, stating: "NY&C: Start early, save big: Be one of the first 100 in-store customers and get your mystery card tomorrow!  Shop Now: [web address]."

27.     Defendants' text messages were template-based and impersonal to Plaintiff.

28.     The text messages sent to Plaintiff's cellular phone by Defendants were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC.  Defendants' system placed the texts automatically, using a list or database of telephone numbers and dialing without human intervention.

29.     The telephone number messaged by Defendants was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

30.     Defendants did not place the text messages for an emergency purpose.

## CLASS ACTION ALLEGATIONS

**A.  The Class**

31.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

32.     Plaintiff represents, and is a member of the following class (the "Class"):

**All persons within the United States who, from May 6, 2012 to the present, received on their cellular telephone at least one text message from Defendants, replied "STOP" to the text message and thereafter received at least one additional text message to the same cellular telephone number.**

33.     Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

6

**B.  Numerosity**

34.     Upon information and belief, Defendants sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

35.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

**C.  Common Questions of Law and Fact**

36.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.   Whether  Defendants sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

b.   Whether  Defendants had prior express consent to send its automated text messages;

c.   Whether Defendant's conduct was knowing and/or willful;

d.   Whether Defendants are liable for damages, and the amount of such damages; and

e.   Whether Defendants should be enjoined from such conduct in the future.

37.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendants routinely send automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and

administered in this case.

**D.  <u>Typicality</u>**

38.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E.  <u>Protecting the Interests of the Class Members</u>**

39.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F.  <u>Proceeding Via Class Action is Superior and Advisable</u>**

40.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendants is small because it is not economically feasible for Class members to bring individual actions.

41.     Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

**<u>COUNT I</u>**
**<u>Violations of the Telephone Consumer Protection Act,</u>**
**<u>47 U.S.C. § 227, *et seq.*</u>**

42.     Plaintiff repeats and realleges the above paragraphs of this Complaint and

incorporates them herein by reference.

43.     Defendants sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

44.     Each of the aforementioned messages by Defendants constitutes a violation of the TCPA.

45.     Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

46.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendants in the future.

47.     Further, Plaintiff and the Class are entitled to and seek a declaration from Defendants that:

- Defendants violated the TCPA;

- Defendants used an ATDS to send telemarketing text messages to consumers; and

- Defendants placed calls to the Plaintiff and the Classes without prior express consent.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

48.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

49.     Defendants knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

50.     Each of the aforementioned messages by Defendants constitutes a knowing and/or

willful violation of the TCPA.

51.     As a result of Defendants' knowing and/or willful violations of the TCPA,

Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in

violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

52.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief

prohibiting such conduct by Defendants in the future.

53.     Further, Plaintiff and the Class are entitled to and seek a declaration from

Defendants that:

- Defendants knowingly and/or willfully violated the TCPA;

- Defendants knowingly and/or willfully used an ATDS to message Plaintiff and
  the Classes;

- Defendants knowingly and/or willfully disregarded Plaintiff and Class members'
  requests that the automated text messages stop;

- Defendants knowingly and/or willfully messaged Plaintiff and the Class with
  telemarketing text messages knowing it did not have their prior express written
  consent to do so;

- It is Defendants' practice and history to place automated telephone calls to
  consumers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following

relief against Defendants as follows:

1.     Injunctive relief prohibiting such violations of the TCPA by Defendants in the
       future;

2.  Declaratory relief as stated;

3.  Statutory damages of $500.00 for each and every call in violation of the TCPA
    pursuant to 47 U.S.C. § 227(b)(3)(B);

4.  Treble damages of up to $1,500.00 for each and every call in violation of the TCPA
    pursuant to 47 U.S.C. § 227(b)(3)(C);

5.  An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

6.  Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: May 6, 2016

Respectfully submitted,

By:   */s/ Jody Burton*
      Jody Burton
      LEMBERG LAW, LLC
      43 Danbury Road
      Wilton, CT 06897
      Telephone: (203) 653-2250
      Facsimile:  (203) 653-3424
      *Attorneys for Plaintiff*